## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ELITE STORAGE SOLUTIONS, LLC,

      Plaintiff,

            v.

SIG SYS, INC.,

      Defendant.

Civil Action No.
1:19-cv-03430-SDG

### ORDER

This matter is before the Court on Defendant's Motion to Dismiss or Transfer [ECF 10]. For the reasons stated below, the Court **DENIES** Defendant's motion. Plaintiff's motion for a hearing on Defendant's Motion [ECF 19] is **DENIED AS MOOT**.

## I.    BACKGROUND

Plaintiff is a citizen of Georgia and Texas.[1] Defendant is a citizen of California.[2] This Court has diversity jurisdiction over this matter. 28 U.S.C. § 1332.

---

[1]    Plaintiff is a limited liability corporation organized in the State of Delaware. ECF 1, ¶ 1. The Court previously required Plaintiff to show that diversity jurisdiction existed. ECF 3. Plaintiff showed that its two members are citizens of Georgia and Texas, satisfying the complete diversity requirement. ECF 5.

[2]    Defendant is incorporated in and has its principal place of business in California. ECF 1, ¶ 3; ECF 10-1, at 19.

The following facts are accepted as true for purposes of this motion.[3]
Plaintiff is in the business of manufacturing racking systems for use in warehouses
and distribution centers.[4] Defendant is a certified, experienced pallet rack
installer.[5] On November 13, 2014, Plaintiff and Harbor Freight Tools USA, Inc.
("HFT") entered into an Equipment and Purchase Installation Agreement
(the "HFT Agreement").[6] Plaintiff attached the HFT Agreement as Exhibit A to the
Complaint.[7] Under it, Plaintiff was obligated to manufacture and install a pallet
storage racking system.[8]

After entering into the HFT Agreement, Plaintiff entered into a subcontract
with Defendant for installation of the racking system.[9] In December 2014, the
parties entered into a Purchase Order Agreement ("POA") regarding the rack

---

[3]  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion
to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable
inferences therefrom are construed in the light most favorable to the
plaintiff.").

[4]  ECF 1, ¶ 2.

[5]  *Id*. ¶ 4.

[6]  *Id*. ¶ 7–8.

[7]  ECF 1-1 (HFT Agreement). In ruling on this motion to dismiss, the Court may
consider any documents attached to or incorporated by reference in the
Complaint. Fed. R. Civ. P. 10(c).

[8]  ECF 1, ¶ 8.

[9]  *Id*. ¶ 9.

installation.[10] The POA is attached as Exhibit B to the Complaint.[11] Defendant began installing the racking system in early 2015 and completed installation in August 2015.[12]

In January 2016, disputes arose between Plaintiff and HFT regarding the rack installation and whether it met the requirements of the HFT Agreement.[13] After being notified of issues with the racking system, Plaintiff and Defendant visited HFT's Distribution Center to review the racking system.[14] Unable to resolve the rack dispute, Plaintiff and HFT entered into arbitration proceedings in November 2017.[15] Defendant was aware of these proceedings as it received a Notice of Claim and Request to Tender to Insurer letter[16] from Plaintiff, and Defendant's President, Edgar Poe, testified during the arbitration.[17] On July 15,

---

[10]   *Id*. ¶ 11.

[11]   ECF 1-2 (POA).

[12]   ECF 1, ¶ 14.

[13]   *Id*. ¶ 15.

[14]   *Id*. ¶ 17.

[15]   *Id*. ¶ 20.

[16]   ECF 1-3.

[17]   ECF 1, ¶¶ 21, 26.

2019, the arbitrator issued a finding that Plaintiff owed HFT $1,433,943.21 plus interest at a rate of $364.63 per day.[18]

Plaintiff asserts that the damages arising from the arbitration were caused by Defendant's defective installation. Accordingly, Plaintiff filed this action on July 29, 2019 asserting the following claims against Defendant: breach of contract; breach of implied warranty; negligent construction; and, contractual indemnity for the arbitration award in favor of HFT.[19] Defendant's motion to dismiss or transfer argues that this case should be dismissed because the forum selection clause contained in the parties' agreement is invalid; Defendant is not subject to personal jurisdiction in Georgia; this Court is an improper venue; and the doctrine of *forum non conveniens* precludes the action. Alternatively, Defendant requests that the case be transferred to the Central District of California.

## II.   ARGUMENTS

Defendant argues that the Complaint should be dismissed or transferred for three reasons: (1) the Court lacks personal jurisdiction over it; (2) this is an improper venue; and, (3) the doctrine of *forum non conveniens* precludes this action. In support of its arguments, Defendant claims that the forum selection clause in

---

18    *Id*. ¶22.

19    ECF 1.

the POA is either superseded by a forum selection clause in the HFT Agreement
or is otherwise invalid and unenforceable. The forum selection clause in the POA
indicates that Georgia state and federal courts will have exclusive jurisdiction over
all disputes.[20] The forum selection clause in the HFT Agreement states that all
disputes will be resolved in Los Angeles County, California.[21] As the forum
selection clauses are central to the parties' arguments, the Court will first address
which clause controls.

### a.    Forum Selection Clauses

Defendant was not a party to the HFT Agreement. Despite this fact, it argues
that contract's forum selection clause supersedes the Georgia forum selection
clause in the POA.[22] In support of this argument, Defendant points to the
supremacy clause in the HFT Agreement. However, Defendant fails to point to
any language in the supremacy clause or the HFT Agreement more generally
showing that the agreement was intended to govern relationships between
Plaintiff and its subcontractors (such as Defendant).

The supremacy clause reads as follows:

---

20    ECF 1-2 (POA), at 5.

21    ECF 1-1 (HFT Agreement), ¶ 13.

22    ECF 10-1, at 8.

> 27. **Supremacy**. Any preprinted terms and conditions on a purchase order, quotation, acknowledgement, invoice or similar document (whether prior or subsequent to the Effective Date) which conflict with the terms of this Agreement shall be deemed superseded by this Agreement. This provision shall not apply to an amendment to this Agreement that is mutually executed after the Effective Date.[23]

Defendant argues that the POA falls within this clause because it is a "purchase order."[24] It claims that there is a conflict between the forum selection clauses in the HFT Agreement and the POA, and, under the supremacy clause, the HFT Agreement controls in such circumstances.[25]  However, Defendant fails to provide any evidence that the supremacy clause was intended to cover purchase orders between HFT or Plaintiff and third parties. Nor does the language of the clause suggest such a reading.

Additionally, the language of the HFT Agreement's forum selection clause does not support Defendant's argument. It reads:

> 13. **Governing Law and Venue.** This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto. This Agreement shall be governed and construed by the laws of the State of California. The Parties are subject to and agree to submit to the jurisdiction of the courts in Los

---

[23]   ECF 1-1 (HFT Agreement), ¶ 27.

[24]   ECF 10-1, at 9.

[25]   *Id*. at 9.

> Angeles, County, California for the purpose of resolving
> any dispute or action relating to this Agreement.[26]

Thus, the clause binds "the Parties" and their "successors and assigns" to litigate disputes arising from the HFT Agreement in California. The HFT Agreement defines "the Parties" as HFT and Plaintiff.[27] Therefore, Defendant is not bound as a party to the HFT Agreement. Nor is Defendant a successor or assignee of Plaintiff. This is explicit in the assignment clause of the HFT Agreement, which states:

> 21. **Assignment**. [Plaintiff] may not assign its rights or delegate its performance in whole or in part under the Agreement without the prior written consent of HFT. HFT hereby consents to [Plaintiff]'s retention of [Defendant] (as [Plaintiff's] agent) for the installation of the Racking System, and the same shall not constitute an assignment of [Plaintiff's] rights under this Agreement.[28]

The assignment clause goes on to state that Plaintiff is free to decide not to hire Defendant and to select a different, experienced, licensed installer for installation of the racking system as long as it obtains prior written approval.[29] As such, the agreement does not even guarantee that Defendant would be hired as a

---

[26]   ECF 1-1 (HFT Agreement), ¶ 13.

[27]   *Id.*, at 1.

[28]   *Id.* ¶ 21.

[29]   *Id.*

subcontractor, much less designate Defendant as a successor or assignee. The HFT Agreement simply does not support Defendant's argument that it controls over the POA with regard to the relationship between Plaintiff and Defendant.

Defendant also argues that it is bound by the HFT Agreement under the "closely related" doctrine.[30] "As a general rule, a party who does not sign a contract is not bound to the terms of that contract. Therefore, absent a valid exception, a party cannot enforce a forum-selection clause in a contract against an adverse party who was not a party to the contract." *Gondolier Pizza Int'l, Inc. v. CRT Too, LLC*, No. 1:08-CV-1986-JEC, 2009 WL 3152183, at *5 (N.D. Ga. Sept. 29, 2009) (citation omitted). However, federal courts have recognized an exception to this general rule when non-parties are closely related to the dispute. "In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).[31]

---

[30] ECF 10-1, at 9.

[31] Defendant appears to conflate the "closely related" doctrine with third-party beneficiary status. ECF 10-1, at 9–10. However, Defendant has provided no evidence or authority to show it is a third-party beneficiary, nor does *Lipcon* require such a relationship to invoke the closely related doctrine. *Lipcon*, 575 F.3d at 1299 (finding that third-party beneficiary relationship would satisfy

In support of Defendant's argument that it falls within the closely related exception, Defendant relies on *Lipcon*.[32] *Lipcon* stands for the proposition that "non-signing parties were bound by the choice of law and choice of forum clauses where the parties' rights were 'completely derivative of those of the [signing parties]—and thus directly related to, if not predicated upon the interests of the [signing parties].'" *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1170 (11th Cir. 2009) (quoting *Lipcon*, 575 F.3d at 1299). In *Lipcon*, the Eleventh Circuit held that a forum selection clause was binding against non-signatory spouses because their interests were completely derivative of the interests of their spouses' who had signed the agreement containing the clause. *Lipcon*, 575 F.3d at 1299.

This case is vastly different from *Lipcon*. Defendant's interests do not stem from—let alone completely derive from—the HFT Agreement. Rather, they come from the POA it entered into with Plaintiff. Further, the *Lipcon* exception requires that the non-parties be so closely related to the dispute that it is foreseeable that they would be bound. Here, it was not foreseeable that Defendant would be bound by the forum selection clause in the HFT Agreement. The language in the HFT Agreement does not show an intent to bind Defendant, and, if that was the intent,

---

closely related and foreseeability requirements but is not required).

[32]    ECF 10-1, at 9.

there would have been no need for the POA to contain its own forum selection clause. Additionally, if Defendant's interests were so closely related as to foreseeably bind it to the HFT Agreement's forum selection clause, Defendant would have been a party to the arbitration between Plaintiff and HFT. *See Cooper*, 575 F.3d at 1169 (finding same exceptions apply to allow third-party to invoke arbitration clause or forum selection clause). As Plaintiff points out: "Defendant was not a party to the arbitration for the explicit reason that it did not sign the agreement between [Plaintiff] and [HFT] and, thus, could not be bound by the agreement's arbitration provision."[33] Defendant's absence as a party to the arbitration proceedings only reinforces its separation from the HFT Agreement.

The Court holds that the HFT Agreement's forum selection clause does not apply to this dispute between Plaintiff and Defendant. Consequently (and as discussed further below), in so far as the POA's forum selection clause is valid and enforceable, Defendant is bound by it.

### b. Personal Jurisdiction

Defendant argues that the Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).[34] The plaintiff bears the initial

---

[33]   ECF 12, at 4, n.1.

[34]   ECF 10-1, at 6.

burden of alleging sufficient facts to make out a prima facie case of jurisdiction over a nonresident defendant. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). When the defendant submits affidavits or declarations objecting to jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (citation omitted).

Defendant spends a large portion of its motion discussing the applicable standards under Georgia's long-arm statute, O.C.G.A. § 9-10-91, and the Due Process Clause. However, the United States Supreme Court has held that personal jurisdiction is a waivable right and "there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, n.14 (1985)

(quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). One accepted form of waiver is through a forum selection clause. "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King*, 471 U.S. at 473, n.14 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Similarly, under Georgia law, a valid forum selection clause is sufficient to waive the state's long-arm statute's requirements. *YP, LLC v. Ristich*, 341 Ga. App. 381, 382 (2017) ("Personal jurisdiction in this case, however, is not based on the Long Arm Statute, but rather is premised on [the defendant]'s waiver of personal jurisdiction in his contract with [the plaintiff]."); *see also OFC Capital v. Colonial Distribs., Inc.*, 285 Ga. App. 815, 818–19 (2007) ("[W]aivers of personal jurisdiction are expressly permitted in this State and thus cannot be said to contravene our public policy."). Accordingly, a forum selection clause can waive a defendant's personal jurisdiction claims under the Due Process Clause and Georgia's long-arm statute.

In order to waive personal jurisdiction, however, the forum selection clause must be valid and enforceable. Thus, the Court must address Defendant's claim that the POA's clause is invalid. When addressing enforceability of such clauses in

diversity cases, federal courts apply the *Bremen* test.[35] *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Under *Bremen* and its progeny, forum selection clauses are "presumptively valid and enforceable unless the [party opposing enforcement] makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 883 (11th Cir. 2018) ("The party seeking to avoid the forum-selection clause bears the burden of showing exceptional circumstances . . . to justify

---

[35] The parties do not clearly assert whether federal or state law applies to this question. However, it is clear that federal common law controls whether a forum selection clause is enforceable. *Cornett v. Carrithers*, 465 F. App'x 841, 842 (11th Cir. 2012). The Eleventh Circuit has noted the potential application of state law when addressing the validity, as opposed to enforceability, of contract formation. *Wylie v. Kerzner Int'l Bahamas Ltd.*, 706 F. App'x 577, 580 (11th Cir. 2017) (citing *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300–02 (5th Cir. 2016)). First, it is not clear that such a distinction exists and, if it does exist, that it alters cases addressing transfers to another federal district court under 28 U.S.C. § 1404(a), as opposed to another tribunal. *Barnett*, 831 F.3d at 303. The Court need not address this potential conflict because Georgia has adopted the *Bremen* test to address both the validity and enforceability of forum selection clauses. *SR Bus. Servs., Inc. v. Bryant*, 267 Ga. App. 591, 592 (2004). Thus, the Court can apply both federal and Georgia law harmoniously to evaluate the validity of the clause. *Davis v. Oasis Legal Fin. Operating Co., LLC*, No. CV 317-022, 2017 WL 5490919, at *3 (S.D. Ga. Nov. 15, 2017), *aff'd*, 936 F.3d 1174 (11th Cir. 2019).

disturbing the clause."). Such clauses may be held invalid or unenforceable in four circumstances:

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy.

*Aviation One*, 722 F. App'x at 883 (quoting *Lipcon*, 148 F.3d at 1296).

Defendant did not specifically assert any of the four bases for finding a forum selection clause to be unenforceable under the *Bremen* test. However, Defendant argues it never consented to jurisdiction in Georgia because the forum selection clause was a "unilateral forum selection provision attached as a separate page to the [POA], which was not negotiated, ratified or signed by Defendant."[36] In the interests of justice, the Court will read Defendant's argument as an assertion that the clause was induced by fraud or overreaching.

The Eleventh Circuit has adopted a two-part "reasonable communicativeness" test to address whether there was fraud or overreaching in a non-negotiated clause. *Krenkel*, 579 F.3d at 1281. This test "takes into account the

---

[36] ECF 10-1, at 10.

clause's physical characteristics and whether the [challenging party] had the ability to become meaningfully informed of the clause and to reject its terms." *Id*. The fact that the challenging party "never saw the forum-selection clause is not determinative of the issue . . . the salient question is whether [Defendant] 'had the *ability* to become meaningfully informed of the clause and reject its terms.'" *Koswire, Inc. v. Alpha Stainless, Ltd.*, No. 2:18-CV-00047-RWS, 2018 WL 8368847, at *8 (N.D. Ga. Aug. 1, 2018) (quoting *Krenkel*, 579 F.3d at 1281 (emphasis added)).

In *Koswire*, the forum selection clause was referenced in one of the party's invoices. 2018 WL 8368847, at *8. The invoice stated, "All goods sold subject to our terms and conditions of sales. Copies available on request." *Id*. at *7. It was undisputed that the party opposing enforcement of the forum selection clause neither asked for nor received a copy of the terms and conditions, and, thus, never read the clause. *Id*. This Court, however, found that the party opposing enforcement had notice of the clause and ample opportunity to request and review the terms and conditions. *Id*. at 9. Specifically, the Court noted that the party opposing the clause had notice of it at least a month before receiving delivery of the materials on the invoice, during which time it could have reviewed the terms and conditions. *Id*. The Court also emphasized that the contract was entered into by two sophisticated business entities and compared that to cases where the

Eleventh Circuit enforced forum selection clauses entered into by business entities and their individual customers, regardless of whether the customers had read or seen the relevant provision. *Koswire*, 2018 WL 8368847, at *9 (citing *Aviation One*, 722 F. App'x at 884; *Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843 F.3d 915, 919 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 965–66 (11th Cir. 2014); *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1244–46 (11th Cir. 2012); *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *3 (S.D. Fla. Sept. 5, 2008)). In *Koswire*, the forum selection clause was enforceable under *Krenkel*'s reasonable communicativeness test. 2018 WL 8368847, at *9.

Likewise here, the Court finds that the POA's forum selection clause was reasonably communicated to Defendant. Defendant entered into the POA. Defendant does not assert that it never received the terms and conditions. Rather, Defendant asserts that the terms and conditions were "attached as a separate page to the [POA], which was not negotiated, ratified or signed by Defendant."[37] But the POA clearly references the attached terms and conditions. The last page of the agreement states: "Purchases made on this order are made in accordance with and

---

[37]   ECF 10-1, at 10.

pursuant to the terms and conditions on the last page of this purchase order. Any changes or alterations to these terms and conditions are rejected outright."[38] This statement is not hidden amongst other language or printed in smaller font than the rest of the agreement. Other than logistical information at the bottom of the page, it is the only substantive writing on the last page of the POA.

    In support of its objection to jurisdiction, Defendant provided a declaration from its President, Edgar Poe.[39] Poe admits that Defendant had possession of the POA and, therefore, the ability to read the terms and conditions starting in December 2014 when Plaintiff sent the POA to Defendant's sales office in Irvine, California.[40] Poe stated that the POA "contained information regarding the scheduling of installation phases to be completed by Defendant on HFT's property, and indicated what payments Defendant would expect to receive for completion of the various installation phases."[41] The first deadline under the POA appears to have been January 15, 2015.[42] Defendant had sufficient time to review

---

[38]   ECF 1-2 (POA), at 4.

[39]   ECF 10-3 (Poe Decl.).

[40]   ECF 10-3 (Poe Decl.), ¶ 9. Poe does not state the exact date Defendant received the POA, however, the date listed on it is December 5, 2014. ECF 1-2 (POA).

[41]   ECF 10-3, ¶ 9.

[42]   ECF 1-2 (POA), at 1.

the POA and its terms and conditions before beginning installation and more than ample time throughout the installation process, which continued until at least August 2015.[43] Defendant's failure to do so does not support a finding that the clause was not reasonably communicated to it.

Finally, like in *Koswire*, the Court finds it significant that the parties in this dispute are business entities. In its response, Plaintiff provided a declaration from its Chief Operating Officer, David Hurd.[44] Hurd states that Plaintiff had worked with Defendant on at least ten other rack installation projects and it paid Defendant $502,264.00 for the HFT project.[45] Thus, the POA was entered into by two sophisticated and experienced businesses. As such, the Court finds that the terms and conditions under the POA were not the result of fraud or overreaching. Consequently, the POA's forum selection clause is valid and enforceable. As a result, Defendant has waived objections to personal jurisdiction and its motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is **DENIED**.

---

[43]   ECF 1, ¶ 14.

[44]   ECF 12-1 (Hurd Decl.).

[45]   *Id*. ¶¶ 7–8.

c.      **Venue and Motion to Transfer**

Defendant also moves to dismiss the Complaint for improper venue under

Fed. R. Civ. P. 12(b)(3).[46] Alternatively, Defendant claims that the doctrine of *forum*

*non conveniens* precludes this action and asks the Court to transfer this lawsuit

under 28 U.S.C. § 1404(a) to the Central District of California.[47]

Venue is proper in this district under the forum selection clause. *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (finding that valid forum selection

clause "represents the parties' agreement as to the most proper forum"). When

venue is proper in the court where the case was initiated and a party requests a

transfer to another federal district, the appropriate method of invoking such a

transfer is under 28 U.S.C. § 1404(a), not Fed. R. Civ. P. 12(b)(3) or *forum non*

*conveniens. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60

(2013). Therefore, to the extent Defendant requests dismissal under Fed. R. Civ. P.

12(b)(3) or *forum non conveniens*, its motion is denied. However, the Court will

address whether transfer to the Central District of California is appropriate under

28 U.S.C. § 1404(a).

---

[46]   ECF 10-1, at 18.

[47]   *Id*. at 20.

"Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine*, 571 U.S. at 60. The statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). In a straightforward application of § 1404(a), "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62–3 (quoting 28 U.S.C. § 1404(a)). The relevant factors include both private and public considerations. However, this analysis changes when the parties have agreed to a valid forum selection clause. *Id*. "The enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63 (quotation omitted). Therefore, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id*.

Relevant to our analysis, *Atlantic Marine* held that a valid forum selection clause requires district courts to adjust the usual § 1404(a) analysis by only

considering the public interest factors. 571 U.S. at 64.[48] When the parties agree to a forum selection clause, the district court "must deem all private interest factors to weigh entirely in favor of the preselected forum." *Id*.[49] Accordingly, the private interest factors Defendant points to as supporting transfer, including convenience for itself, its witnesses, location of evidence, and relative means of the parties, weigh entirely in favor of this venue.

The public interest factors include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with

---

[48] *Atlantic Marine* held that the district courts should adjust their analysis in three ways. *Atl. Marine*, 571 U.S. at 63. However, the other two adjustments are not relevant to the analysis here because they apply when the plaintiff files the lawsuit in a venue other than the one pre-selected by the parties. *Id*. at 63–65 (noting that in such circumstances, plaintiff's choice of forum merits no weight and transfer under § 1404(a) will not carry original venue's choice of law rules). Nevertheless, this Court has held that the principles and instructions from *Atlantic Marine* still apply in the context "where a plaintiff files suit in the pre-selected forum and the defendant wishes to transfer the litigation elsewhere." *A. Garcia Trucking & Produce, LLC v. Mi Pueblo Supermarket, LLC*, No. 1:18-CV-1127-ELR, 2019 WL 2084410, at *4 (N.D. Ga. Jan. 10, 2019) (quotation omitted).

[49] The Supreme Court has defined the private interest factors as: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine*, 571 U.S. at 63, n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)).

> the law that must govern the action; the avoidance of
> unnecessary problems in conflict of laws, or in the
> application of foreign law; and the unfairness of
> burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241, n.6. Defendant does not contend that any of those factors favor transfer.[50] Further, given the POA's Georgia choice of law provision, Georgia law controls this dispute.[51] Thus, the public interest factors favor this venue over the Central District of California. But, even if all the public interest factors favored transfer, *Atlantic Marine* cautions that those factors would outweigh a forum selection clause only in unusual cases. *Atl. Marine*, 571 U.S. at 64. This is not that case. Accordingly, the Court **DENIES** Defendant's alternative request for transfer.

---

[50]  Defendant seems to argue that parts of this dispute are governed by California law. ECF 10-1, at 23–24. However, that argument appears to be based on Defendant's position that the HFT Agreement controls this action, which the Court declines to accept for the reasons discussed herein.

[51]  *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) ("Pursuant to Georgia law, contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state.") (qu*oting CS–Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)) (internal quotation marks omitted). Neither party has suggested that the application of Georgia law would violate any public policy or be prejudicial to any state's interests.

### III.    CONCLUSION

The Court **DENIES** Defendant's Motion to Dismiss or Transfer [ECF 10].

Plaintiff's motion for a hearing on the motion [ECF 19] is **DENIED AS MOOT**.

Defendant shall file its answer to the Complaint within 21 days from entry of this

Order. The parties shall conduct their Rule 26(f) conference within 14 days from

the date Defendant files its answer. The parties shall serve their initial disclosures

and submit a Joint Preliminary Report and Discovery Plan within 30 days from the

date Defendant files its answer. Discovery will commence 30 days after Defendant

files its answer.

**SO ORDERED** this the 20th day of March 2020.

Steven D. Grimberg
United States District Court Judge